UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIDI BARNARD,

        Plaintiff,                           CIVIL ACTION NO. 05 CV 40071 FL

        v.                                  DISTRICT JUDGE PAUL V. GADOLA

JO ANNE B. BARNHART,               MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

The Plaintiff, Heidi M. Barnard, brings this appeal of the Agency's decision denying her Social Security disability insurance benefits before the federal district court. Plaintiff claims defendant's decision, as determined by the administrative law judge (ALJ), lacked the requisite weight given to the opinion of a treating physician, and lacked reasons for why the ALJ did not give the treating physician's opinion controlling weight. For the reasons discussed in this Report, it is recommended that the defendant's motion requesting summary judgment be granted, Plaintiff's motion be denied, and the decision denying disability benefits be affirmed.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed an application for Supplemental Security Income (SSI) disability benefits and medical assistance under Titles XVI and XIX of the Social Security Act on June 27, 2001,

claiming an onset date of June 10, 2001. (Tr. 49) Plaintiff claimed disability due to chronic back and rib pain as well as a spinal deformity.[1] (Tr. 49, 62) Plaintiff appeared before administrative law judge (ALJ) Lawrence E. Blatnick on April 16, 2004. (Tr. 325-69) During that hearing, the plaintiff testified as to her physical limitations and vocational expert (VE) Donald Hecker provided testimony related to plaintiff's inability to perform jobs from her past and the existence of other jobs available to an individual with Plaintiff's background and physical limitations. (Tr. 361-368) On July 19, 2004 the ALJ issued a decision finding Plaintiff not disabled. (Tr. 13-24)

### A.     Plaintiff's Background – Education and Work History

Plaintiff's age at the time of the hearing was 37. She graduated from Dow High School in 1985. She attended, but did not graduate from, Great Lakes Junior College. (Tr. 129) Plaintiff's past relevant work history consisted of semi-skilled tasks which included light physical exertion as a cashier/stocker, waitress, dry cleaning desk person and caterer as well as the unskilled job of housecleaner. (Tr. 362-63)

---

[1] In a mental residual functional capacity assessment performed March 7, 2002, the medical consultant, Ronald Marshall, found that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures, the ability to remember and carry out short and simple instructions, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances as well as the ability to work in coordination with or proximity to others without being distracted by them and the ability to make simple work-related decisions. She was only moderately limited in her ability to understand, remember and carry out detailed instructions and her ability to maintain attention and concentration for extended periods. (Tr. 153) She does not appeal her denial based on any mental impairment.

### III.  LEGAL STANDARDS

#### A.  Disability Evaluations

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see also 42 U.S.C. § 1382c(a)(3)(C)(I). The claimant bears the burden of providing that he is disabled. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB and SSI claims. 20 C.F.R. § 404.1520, 20 C.F.R.§ 416.920. As discussed in *Foster, Id.* at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.

> Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

B.  **Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioners of Social Security may after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F2d 679, 681 (6th Cr. 1989); *Key v Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F. 3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

Plaintiff claims the ALJ did not properly evaluate her complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each

individual has a different tolerance of pain.  Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984).  Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff.  Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987).  Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly.  Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability.  Subsequently, the Social Security Act was modified to incorporate the standard.  20 C.F.R. § 404.1529 (1995).  A finding of disability cannot be based solely on subjective allegations of pain.  There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

Plaintiff argues that the treating physician's testimony was not given the appropriate weight.  It is true that great deference is to be given to medical opinions and diagnoses of treating physicians.  Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).  It is also true that complete deference is given when said opinions are uncontradicted.  However, in both instances, the opinion of the treating physician must be based on sufficient medical data.  Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367

(6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. <u>Villarreal v. HHS</u>, 818 F.2d 461, 463 (6th Cir. 1987).

### C.  Medical History

In 2001, Plaintiff began to have neck, back, and rib pain. This ultimately led to fusion surgery in October, 2003. She has experienced some improvement since then. The medical records indicate that plaintiff saw Dr. Branson, her chiropractor, on June 18, 2001, and reported that she had reached to brush her hair and experienced immediate severe pain in the left rib. (Tr. 102) In reference to the June 18 visit, Dr. Branson filled out the Family Independence Agency's Medical Examination Report on August 7, 2001, stating that Plaintiff had acute thoratic subluxation complex with a dislocation of the T7 and T8 ribs and splinting muscle spasms, according to x-rays taken. (Tr. 118) On the same form, Dr. Branson indicated that Plaintiff could not lift more than 20-25 pounds occasionally during a restrengthening period that should last no more than 90 days. (Tr. 119) Dr. Branson referred Plaintiff to Advanced Medical Care July 31, 2001. (Tr. 101)

On August 8, 2001, Plaintiff visited Dr. Lee with Advanced Medical Care, complaining of the same acute rib and back pain that extended from her neck to her lower back. Dr. Lee filled out the Medical Examination Report on August 14, 2001, with x-rays revealing the spinal deformity rotokyphoscoliosis, paraspinal strain as well as compression fractures of approximately T6 and T7. (Tr. 116) The physical limitations section states that Plaintiff can lift

no more than 25 pounds occasionally, and Dr. Lee indicated that it was unknown whether the limitation would last more than 90 days. (Tr. 117)

On April 13, 2002, Dr. Simpson from Michigan Medical Consultants examined Plaintiff at the request of the state agency. (Tr. 157-59) Dr. Simpson is a board-certified internist. Plaintiff stated that she had arthralgias involving the mid-to-lower back and a diagnosis of scoliosis of the lumbar spine and that these had lasted for nine months. (Tr. 157) She occasionally used a back brace, but did not regularly take any medications and found relief with use of ice packs. She stated that she can lift no more than ten pounds, she had to give up hobbies like snowmobiling and jetskiing and she finds it difficult to bend repetitively. (Tr. 157) Dr. Simpson's diagnosis included mild dextroscoliosis of the thoratic and lumbar spine as well as paravertebral muscle spasm and tenderness of the lumbar spine. He noted that Plaintiff was able to walk normally, get on and off the examination table with no trouble as well as squat, heel/toe walk and hop. (Tr. 158-159)

A physical residual functional capacity assessment on April 29, 2001, indicated that Plaintiff can occasionally lift up to 20 pounds and frequently lift 10 pounds. She can stand and/or walk and/or sit with normal breaks for a total of about 6 hours in an 8-hour workday, and her ability to push and/or pull is limited in her lower extremities. (Tr. 162) It is also noted that she had no difficulty getting on and off the examination table, heel/toe walking, squatting or hopping. She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl, but she should never climb a ladder, rope or scaffolds. (Tr. 163)

Medical records from Midland General Practice, where Plaintiff saw Dr. Vargas, consist of two financial statements and three notes from the doctor indicating Plaintiff's inability to return to work. The first note, from July 8, 2001 indicates a diagnosis of "acute lumbosacral instability" restricting Plaintiff from working for 6 months. (Tr. 173) The second and third notes were both written on prescription forms on November 6, 2001, and March 11, 2002, indicating that due to lumbosacral instability Plaintiff could not return to work for at least 6 months. (Tr. 171-72) Dr. Vargas regularly prescribed pain medication after Plaintiff requested it starting in early 2003. (Tr. 269-84, 310-14)

Her x-rays of October, 2002 showed minimal scoliotic curvature but no other deformities. (Tr. 259) Thoracic x-rays of the same date showed minor hypertrophic degenerative changes in T8-T10 in an otherwise normal exam. (Tr. 260) Lumbar spine x-rays noted complete lumbarization of S1 but no other abnormalities. (Tr. 261)

Dr. Vargas referred Plaintiff to a neurosurgeon with the MidMichigan Physicians Group, Dr. Diefenbach, in June of 2003. Dr. Diefenbach reported to Dr. Vargas that an MRI showed degenerative disc disease seen at L4-L5. In the thoracic spine she has several disk protrusion without any herniations. (Tr. 291) Dr. Diefenbach reported to Dr. Vargas on June 20, 2003, that a bone scan indicated abnormal uptake activity in the lower cervical region. He suspected that she had facet arthropathy and sent her to Dr. Grover for facet injections cortisone injections. At that time he noted that future surgery might be necessary. (Tr. 290)

Plaintiff began seeing Dr. Grover with the Great Lakes Pain Consultants on July 8, 2003. After a physical examination, Dr. Grover noted that Plaintiff had good range of motion in her

cervical spine, and that pain was reproduced with lateral rotation.  The lower lumbar region showed tenderness in the right sacroiliac joint region.  He reported no facet or spinous process tenderness at the time.  Dr. Grover's assessment was cervical neck pain of unclear etiology as well as degenerative disk disease at the L4-5 region.  (Tr. 192-93)  Plaintiff underwent an MRI of the cervical spine on July 9, 2003, which demonstrated C5-6 degenerative findings with subtle right hemi-cord distortion.  Dr. Grover discussed treatment options with Plaintiff, and decided on cervical epidural steroid injections.  (Tr. 190)  Plaintiff received the steroid injections again on July 30, 2003, and August 13, 2003, however they provided no significant relief.  (Tr. 188)

On October 22, 2003, Plaintiff underwent surgery with Dr. Diefenbach for her cervical herniated nucleous pulposus, C5-C6 and cervical spondylosis, C6-C7.  (Tr. 200-201)  The procedure included cervical diskectomies as well as cervical fusions at both the C5-6 and C6-7 levels.  (Tr. 200)  Plaintiff's discharge forms after surgery restrict her from lifting anything over five pounds, participating in any strenuous activity, or driving.  Dr. Diefenbach wrote that these limitations should last a week, however he did not fill out the portion of the form indicating when Plaintiff could return to work.  (Tr. 195)  During follow-up visits to Dr. Diefenbach after the surgery, Plaintiff was reported to be "doing well" as early as November 21, 2003.  (Tr. 322)  On December 16, 2003, post-operative x-rays showed a stable appearance with straightening of the cervical spine and no evidence of subluxation.  (Tr. 294)

### D.  Occupational Evaluations

Dr. Hecker, a vocational psychologist, testified as the Vocational Expert (VE) at Plaintiff's hearing.  After listening to the ALJ's hypothetical person's limitations, age and work

experience, the VE testified that the hypothetical person would not be able to perform Plaintiff's past relevant work. (Tr. 364) However, the VE testified that there were many other jobs in the economy which she would be able to perform.

At the sedentary level, there would be 4,500 jobs as an attendant or cashier making change with an automated cash register system, and also jobs as an attendant for a parking lot. There would be 3,000 jobs in a clerical setting doing routine tasks such as collating documents. 3,500 jobs exist where she could be a bench assembler putting together lighter products, and another 3,500 jobs would be available as an inspector or a packager. Additionally, there are 1,000 jobs available as a security monitor watching a screen for security violations. (Tr. 365)

If she has to nap three hours a day, and could not stand in order to perform a simple job, Dr. Hecker testified that there would be no jobs available if the ALJ were to find Plaintiff's testimony relative to her pain, discomfort and limitations to be entirely credible. (Tr. 366-67)

**IV. ANALYSIS**

The ALJ concluded that while Plaintiff's impairments from the degenerative disc disease of the cervical spine, status post cervical spinal surgery are considered "severe" based on the requirements in the Regulations, these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 23) The ALJ reported that Plaintiff has markedly limited her activities, but that there is no medical or other evidence to show that her condition causes such limitations. In view of the medical and other evidence described above, the ALJ found that Plaintiff's statements regarding the effect of her impairments upon her ability to work not fully credible. (Tr. 21) No doctor

found her totally disabled and objective testing does not support a medical condition that could reasonably produce the disabling pain alleged.

While the ALJ found that Plaintiff was unable to perform any of her past relevant work, she is a "younger individual" and has more than a high school education and has the residual functional capacity to perform a significant range of sedentary work. (Tr. 23) Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567(A).

The ALJ, relying on the testimony of the vocation expert, noted 4,500 sedentary unskilled positions as an attendant/cashier; 1,000 attendant jobs; 3,000 clerical jobs; 3,500 bench assembler jobs; 1,000 inspector/checker jobs; and 1,000 security monitor jobs in the State of Michigan that such an individual could perform. (Tr. 23) Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of his decision. (Tr. 23)

The ALJ's findings detailed above are supported by substantial evidence. The consistent findings of the majority of Plaintiff's treating and examining physicians support the ALJ's decision about Plaintiff's capabilities and limitations. As discussed above, Dr. Branson's opinion as a chiropractor is not acceptable medical evidence. Dr. Simpson observed Plaintiff's

ability to walk normally, squat, hop, and get on and off the examination table with ease. (Tr. 158-159) Upon discharge from her neck surgery, Dr. Diefenbach's instructions stated that she could not lift more than 5 pounds, she could not participate in strenuous activities and she could not drive—however these limitations were only intended to last a week. (Tr. 195) Dr. Vargas is the only source indicating that Plaintiff could not return to work for at least 6 months. (Tr. 171-73)

While the opinion of Dr. Vargas could support a finding that Plaintiff could not return to work, the court cannot say that the ALJ erred in giving this opinion little weight. Dr. Vargas' opinion that Plaintiff could not return to work for at least 6 months due to "lumbosacral instability" was not supported by objective evidence. It is inconsistent with other medical evaluations of Plaintiff's residual functional abilities. Dr. Vargas' opinion is not consistent with x-ray evidence which showed only mild degenerative conditions. Dr. Vargas' office notes show few clinical findings, although he regularly prescribed pain medication for her. Therefore, the ALJ had a valid basis to give more weight to the opinions of the other doctors to the extent that their opinions differed from that of Dr. Vargas.

Based on the foregoing, the court finds that the ALJ's conclusion that Plaintiff is able to return to work is supported by substantial evidence. While treating physicians' opinions were in conflict, the ALJ reasonably resolved the conflict. Some evidence in the record might support the possibility of a different conclusion, but the court does not conclude that the ALJ erred in his determination confirming the initial denial of disability benefits to the plaintiff. Having reviewed the record in its entirety, the court finds that the hypothetical the ALJ placed to the VE

is an accurate description of Plaintiff's functional limitations, and the VE's testimony in response to the hypothetical constitutes substantial evidence in support of the ALJ's determination that Plaintiff is not disabled. The ALJ complied with the regulatory procedure and based his conclusion on substantial evidence derived from the record of Plaintiff's claim and on the testimony provided during the administrative hearing on April 16, 2004.

## V.    CONCLUSION

For the reasons stated above, the court recommends that the district court grant the Commissioner's motion for summary judgment in her favor. The ALJ's determination was supported by substantial evidence that Plaintiff's condition, while imposing limitations which impaired her from engaging in her past relevant work, did not exclude her from the ability to perform other substantial gainful activity. The Plaintiff's motion for summary judgment should therefore be denied, and the case dismissed with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                   s/Virginia M. Morgan
                                                   VIRGINIA M. MORGAN
Dated: September 29, 2005_____       UNITED STATES MAGISTRATE JUDGE

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record and the Social Security Administration by electronic means or U.S. Mail on September 29, 2005.

                           s/Jennifer Hernandez
                           Case Manager to
                           Magistrate Judge Morgan